# In the United States Court of Federal Claims

No. 14-690

Filed: August 4, 2020

|  |  |
|---|---|
| **NATHAN SOMMERS,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES,**<br><br>*Defendant.* | Keywords: RCFC 12(b)(6);<br>Reported Opinion; Military<br>Pay Act; Voluntary Retirement |

*John B. Wells*, Military Veterans Advocacy, Inc., Slidell, LA, for the plaintiff.

*Douglas K. Mickle*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. for the defendant, with *Lt. Col. Joshua W. Johnson*, Litigation Division, U.S. Army Legal Services Agency, Department of the Army, Department of Defense, Fort Belvoir, VA, of counsel.

## MEMORANDUM OPINION

**HERTLING**, Judge

The plaintiff, Army Master Sergeant (Retired) Nathan Sommers, brought this complaint alleging that the defendant, the United States, acting through the United States Army, forced him into early retirement by taking improper adverse actions against him due to the plaintiff's political views and religious beliefs.

The defendant has moved to dismiss the case under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Alternatively, the defendant has moved for judgment on the administrative record under RCFC 52.1, asserting that the plaintiff is not entitled to any of the relief requested. The plaintiff has filed a cross-motion for judgment on the administrative record, claiming that his retirement from the Army was involuntary and seeking restoration to his rank and the back pay and benefits he would have earned had the Army not forced him out of the service.

The Court finds that, under the governing law and precedents, the plaintiff's retirement was voluntary. Accordingly, the Court grants the defendant's motion to dismiss for failure to state a claim.

I.  **BACKGROUND**

    A.  **Facts**[1]

The plaintiff was an enlisted member of the Air Force from 1988 until his honorable discharge on March 19, 1997. (ECF 87 at ¶¶ 5, 9.) He then enlisted in the Army on March 24, 1997, and was assigned to the United States Army Band as a featured tenor soloist. (*Id.* at ¶ 11.) The plaintiff was promoted from Staff Sergeant (E-6) to Sergeant First Class (E-7) on September 1, 2001, then promoted to Master Sergeant (E-8) on September 1, 2012. (*Id.* at ¶¶ 10, 12, 15.)

        1.  **Political and Religious Activity**

The plaintiff identifies as a religious Christian who adheres to conservative political ideals. (ECF 87 ¶ 4.) He alleges that he has always expressed these beliefs "within the constraints of" Department of Defense regulations. (*Id.*)

In May 2012, the plaintiff expressed his political beliefs through bumper-stickers on his privately-owned vehicle. (*Id.* at ¶ 16.) He was counseled against doing so and alleges he was ordered to remove the bumper stickers. (*Id.* at ¶ 17.) In response, the plaintiff submitted complaints to congressional offices and an equal employment opportunity counselor. (*Id.* at ¶ 20.)

The plaintiff alleges that he was observed by his commanding officer reading a book by a conservative political author while backstage awaiting the start of a performance of the Army Band at the U.S. Capitol in July 2012. (*Id.* at ¶ 21.) In September 2012, the plaintiff posted twice on Twitter about the repeal of the "Don't Ask, Don't Tell" policy. On both occasions, his Twitter posts noted that he had served Chick-fil-A at a reception held to recognize his promotion to Master Sergeant.[2] (*Id.* at ¶¶ 23, 24.)

---

[1] Because the Court grants the defendant's motion to dismiss under RCFC 12(b)(6), the facts as alleged in the amended complaint (ECF 87) are assumed to be true. This recitation of the facts does not therefore constitute findings of fact; rather, the Court provides a recitation of the facts as alleged by the plaintiff. For additional context, the Court also refers to facts derived from the administrative record in the case. These facts are included only to add context and to provide a more complete background; the Court does not rely on any factual claim aside from those contained in the plaintiff's amended complaint in deciding the defendant's motion to dismiss.

[2] The plaintiff does not explicitly allege that these Twitter posts were an expression of his religious or political beliefs. Because the Court is hearing this case on a motion to dismiss and must construe the complaint and inferences drawn from the complaint in the manner most favorable to the plaintiff, the Court assumes that these Twitter posts reflected the plaintiff's religious or political beliefs.

In October 2012, the plaintiff was counseled by superiors in his chain-of-command for engaging in political activity while in uniform. That counseling was recorded in a DA Form 4856 (Developmental Counseling Form).[3] (*Id.* at ¶ 28.) The plaintiff's commanding officer, Colonel Thomas Palmatier, the commander of the United States Army Band, initiated an Army Regulation 15-6 investigation of the plaintiff.[4] (*Id.* at ¶ 29.) The plaintiff responded by filing a request for administrative review (an Article 138 complaint) with COL Palmatier, requesting the removal of the DA Form 4856 from his record and asserting that the Army Regulation 15-6 investigation was improper retribution for the plaintiff's privileged communications with congressional offices and the Army inspector general about his alleged mistreatment.[5] (*Id.* at ¶ 32.)

The Army Regulation 15-6 investigation appears to have ended after an interview with the plaintiff and his counsel by COL Palmatier on February 14, 2013. (*Id.* at ¶ 37.)

On July 9, 2013, the plaintiff filed another Article 138 complaint "seeking redress because [COL] Palmatier was allowing a vehicle with 'pro-Obama' bumper stickers to park in [the Colonel's] parking space."[6] (ECF 87 at ¶ 53; *see also* AR 419.) The plaintiff alleges that, at

---

[3] DA Form 4856 is a "Developmental Counseling Form." *DA Forms*, Army Publishing Directorate (2020) https://armypubs.army.mil/ProductMaps/PubForm/Details.aspx?PUB_ID=51938. The Army Board for Correction of Military Records ("ABCMR") summarized the counseling differently. According to the ABCMR, the counseling noted that the plaintiff's political comments led to "Soldiers in his rating chain express[ing] fear" and advised the plaintiff that "Soldiers must balance their personal feelings with the Army mission" and "he should express his opinions while being aware of the overall ramifications." (AR 414-15 (Citations to the Supplemental Administrative Record submitted by the defendant (ECF 86, pages AR 407-1043) are abbreviated "AR.").) While the Court notes the parties' different perspectives on the incident of counseling, for purposes of the defendant's motion to dismiss, the facts as alleged by the plaintiff are accepted as true.

[4] Army Regulation 15-6 investigations are informal investigations authorized by Army Regulation 15-6, *Procedures for Investigating Officers and Boards of Officers* (October 2, 2006).

[5] An Article 138 complaint is an administrative-review process. *See Article 138 Complaints*, https://sill-www.army.mil/usag/jag/_docs/LAOInfoPapers/MI/Art%20138%20Complaints.pdf. Under the Article 138 process, "any member of the armed forces who believes himself wronged by his commander, and refused redress, may make a complaint to any superior commissioned officer, who will forward the complaint up to the General Court Martial Convening Authority (GCMCA)." *Id.*

[6] The ABCMR decision makes clear that the vehicle was parked in COL Palmatier's parking space. The decision recounts the Colonel's response to the plaintiff's argument and notes that "[a]s a commander, [COL Palmatier] lives across the street and never uses that parking space. Instead, it is awarded to the Soldier with the highest physical fitness score." (AR 419.)

an unspecified later time, COL Palmatier revoked that vehicle's parking permission.  (ECF 87 at ¶ 55.)

### 2. Travel and Leave

COL Palmatier authorized the plaintiff to take 30 days of convalescent leave at his home address from March 23 through April 21, 2013, following the plaintiff's foot surgery.  (AR 91 at 3 (citing AR 71, 176).)[7]  COL Palmatier had previously approved the plaintiff's personal leave request for the period April 18 to 21, 2013, during which the plaintiff traveled to Florida in support of a religious music group.  (ECF 87 at ¶ 41.)

The parties disagree about both the propriety of travel while on convalescent leave and when the plaintiff was supposed to report to work.  According to the plaintiff, "there were no restrictions while traveling in convalescent leave status with medical approval."  (ECF 87 at ¶ 41.)  The plaintiff further notes that on April 22, 2013, he was scheduled for an individual practice session, which did not require him to report for duty and allowed him to practice his singing at home.  (ECF 94 at 25.)  According to the defendant, on the other hand, the plaintiff noted on his leave request that his location while on leave was his home address, but his personal Facebook page showed that he had flown back from Florida on April 22, 2013, a duty day.  (ECF 91 at 3 (citing AR 181-193).)  The defendant notes that the plaintiff stopped at work on April 22 to prepare for an April 23 inspection.  (*Id.* (citing AR 71-72).)  For purposes of resolving the defendant's motion to dismiss, the Court accepts as true the plaintiff's position that his travel was appropriate and his physical location was irrelevant in light of of his individual practice session on April 22, 2013.

On May 4, 2013, the plaintiff contacted Command Sergeant Major Mitchell Spray to notify him of the plaintiff's medical appointment on April 22, 2013.  (ECF 94 at 4 (citing AR 128-29).)  In response, Sergeant Major Alec Maly asked the plaintiff to provide documentation of that medical appointment.  (ECF 91 at 4 (citing AR 72).)  According to the defendant, the plaintiff "provided a document signed by a licensed professional counselor (LPC) that he attended several counseling appointments in April and May 2013, but this document did not mention specific dates for these appointments."  (*Id.* at 5 (citing AR 119).)  According to the plaintiff, his email was sent in error and he had notified CSM Spray of that fact; the medical appointment had occurred on April 23, 2013.  (ECF 94 at 4 (citing AR 175).)  The plaintiff argues that providing documentation of the April 23 medical appointment would have required him to disclose his son's confidential medical information, and the Army had never provided a Privacy Act release for those records.  (ECF 94 at 4.)

---

The Court adds the ABCMR's finding merely for clarity and does not rely on it in any respect in resolving the motion to dismiss.

[7] Citations to the Administrative Record submitted by the defendant (ECF 16) are also abbreviated "AR."  As noted in footnote 1, this information is provided only for additional context and supplements the factual allegations in the amended complaint, but the Court does not rely on these facts in ruling on the motion to dismiss.

4

On May 16, 2013, SGM Robert Petillo and SGM Maly counseled the plaintiff regarding his work while on convalescent leave and for misrepresenting his location on his request for leave, DA Form 31. (ECF 91 at 3.) The plaintiff received counseling for traveling during convalescent leave status. (ECF 87 at ¶ 40.) The plaintiff alleges that he was informed that "'no further action' would be taken concerning this matter." (*Id.*)

On June 7, 2013, COL Palmatier instituted non-judicial punishment proceedings pursuant to Article 15 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 815, against the plaintiff. The charges alleged that the plaintiff: 1) failed to go to his appointed place of duty without authority on or about April 23, 2013; 2) failed to obey a lawful order by SGM Maly to submit documentation by May 20, 2013, verifying the plaintiff's whereabouts on April 23, 2013; and 3) made a false official statement on April 5, 2013, when the plaintiff told his chain-of-command that he had a doctor's appointment on April 22, 2013. (ECF 87 ¶¶ 46-47; *see also* ECF 94 at 5.) On June 12, 2013, the plaintiff asked that COL Palmatier be disqualified from imposing the Article 15 because he was an accuser. (ECF 87 at ¶ 49; *see also* ECF 94 at 5 (citing AR 313, AR 367-69).) The request was denied. (ECF 87 at ¶ 50.)

On June 20, 2013, the plaintiff was found guilty of all three specifications. (*Id.* at ¶ 51.) According to the defendant, the plaintiff did not demand a trial by court-martial, requested a closed hearing, and elected not to have someone speak on his behalf. (ECF 91 at 5 (citing AR 195).) COL Palmatier directed filing of the decision in the performance section of the plaintiff's official military personnel file and imposed an oral reprimand as punishment for the offenses. (*Id.*) On June 24, 2013, the plaintiff appealed and submitted additional evidence to Major General Jeffrey Buchanan, Commander of Military District Washington. (ECF 87 at ¶ 52; *see also* ECF 91 at 5.) The plaintiff's appeal was "summarily denied" on July 3, 2013. (ECF 87 at ¶ 52; *see also* ECF 91 at 5 (citing AR 197).)

### 3. Enlisted Evaluation Reports

On May 29, 2013, the plaintiff received his Enlisted Evaluation Report for the period of March 1, 2012 to February 28, 2013. (ECF 87 at ¶ 42.) The plaintiff alleges that this evaluation report was the first "substandard" one he had received during his military career. (*Id.*) Although the plaintiff received a "success" rating for "values/NCO responsibilities, physical fitness and military bearing, and training[,]" he received a "No" rating for upholding the "Army value of respect and equal opportunity" and a "needs some improvement" rating for "leadership" and "responsibility and accountability."[8] (ECF 91 at 5-6 (citing AR 203-04).) The plaintiff was

---

[8] The plaintiff's Enlisted Evaluation Report also noted that the plaintiff had received performance counseling on June 27, 2012, November 7, 2012, November 30, 2012, and February 6, 2013, and developmental counseling on June 27, 2012, August 16, 2012, October 11, 2012, and November 7, 2012. (ECF 91 at 5 (citing AR 58-61; AR 55-57; AR 62; AR 72-76).) In connection with this performance counseling, the plaintiff was counseled "regarding the summary of his Army Soldier Leader Risk Reduction results[,]" and his strained relationships at work. (ECF 91 at 6 (citing AR 62-63).) The plaintiff was also told that a subordinate soldier "requested to be removed from [the plaintiff's] rating chain." (*Id.*) Again, the Court includes these aspects of the administrative record for additional context but neither makes any finding

rated 3 out of 5 (with 1 being the best and 5 being the worst) overall, and 4 for overall potential for promotion and service in position of greater responsibility.[9] (*Id.* at 6 (citing AR 204).)

According to the plaintiff, the following statements in the 2013 evaluation were incorrect:

> "[S]ome of the Soldier's actions appeared to have a negative impact on subordinates and eroded trust between himself and his section compromising his ability to lead."
>
> [The plaintiff] "was late to a mission formation, which caused The Army Chorus undue concern and distraction just prior to mission execution."
>
> [The plaintiff] "resisted written counseling, failing to lead by example and undermining his ability to hold his subordinates accountable."
>
> [The plaintiff] "demonstrated difficulty accepting correction from his leadership and taking responsibility for his own actions."
>
> [The plaintiff] "has demonstrated limited potential for positions of greater rank and responsibility."
>
> [The plaintiff] "did not treat people as they should be treated."

---

with respect to their accuracy nor relies on them in resolving the motion to dismiss; instead, the Court accepts as true the plaintiff's allegations and gives no weight to these factual elements in the administrative record, whether supportive of or adverse to the plaintiff's allegations, in resolving the motion to dismiss.

[9] The plaintiff's Enlisted Evaluation Report for March 1, 2013, through February 28, 2014, was similar. (ECF 91 at 7 (citing AR 199-200).) The plaintiff again received performance counseling and developmental counseling. (*Id.* (citing AR 64-68; AR 69-72).) The plaintiff was rated as meeting the standards for competence, physical fitness and military bearing, and leadership and training. (AR 200.) SGM Petillo found, however, that the plaintiff needed improvement in the traits of responsibility and accountability, noting that "while on convalescent leave, [the plaintiff] traveled out of state without his leadership's knowledge and without providing an accurate contact address," and that the plaintiff "failed to properly document his need to be absent during a Command Staff Assistance Visit inspecting his area of responsibility in MEDPROS administration." (*Id.* at 7-8 (citing AR 200; AR 69-72).) The evaluation rated the plaintiff's overall potential for promotion and/or service in positions of greater responsibility as "marginal." (*Id.* at 8 (citing AR 200).) The plaintiff was again rated 3 out of 5 overall, and 4 for overall potential for promotion and service in position of greater responsibility. (*Id.* (citing AR 200).) The plaintiff's amended complaint contains no allegations regarding this Enlisted Evaluation Report. The Court includes these facts for additional context but does not rely on them in ruling on the motion to dismiss.

(ECF 87 at ¶ 43 (quotation marks in original without citation).)

On August 10, 2013, the plaintiff appealed this evaluation. (*Id.* at ¶ 56.) On August 15, 2013, the Army Human Resource Command returned his appeal without action due to insufficient evidence. (ECF 94 (at 6 (citing AR 38-39).) On August 20, 2013, the plaintiff resubmitted an appeal that was accepted on August 29, 2013. (*Id.* (citing AR 30, 34-37).) By July 31, 2014, when the plaintiff retired, his appeal of his 2013 evaluation had still not been acted on by the Army (ECF 87 at ¶ 75; ECF 94 at 6). On August 14, 2014, the Army Review Board administratively closed the plaintiff's evaluation appeal without action by the Enlisted Special Review Board and advised the plaintiff that he could appeal to the ABCMR. (ECF 94 at 6.)

### 4. Qualitative Management Program and Retirement

The Army's Qualitative Management Program ("QMP") identifies noncommissioned officers whose performance, conduct, and/or potential for advancement do not meet the Army standards, as determined by a centralized selection board responsible for QMP screening. *See* Army Regulation 635-200, Active Duty Enlisted Administrative Separations (June 6, 2005, Rapid Action Revision September 6, 2011), ¶ 19-2. On August 15, 2013, the plaintiff was notified that he would be considered by the QMP for potential denial of continued service. (ECF 87 at ¶ 57.) On August 21, 2013, the plaintiff appealed the QMP referral and filed a supplemental appeal on October 4, 2013. (ECF 87 at ¶¶ 58-59).

On February 7, 2014, the plaintiff received a notification of denial of continued service and was informed that he would be discharged not later than August 1, 2014. (ECF 87 at ¶ 60; *see also* ECF 91 at 8 (citing AR 10-11; AR 27-280).) In lieu of separation, which would result in the loss of benefits, the plaintiff was informed that he could request voluntary retirement in order to preserve his retirement benefits. (ECF 87 at ¶¶ 61-62). The administrative record reflects more fully that the plaintiff was provided the following options: 1) request voluntary retirement in lieu of involuntary separation, 2) request voluntary discharge, or 3) appeal and request retention. (ECF 91 at 8 (citing AR 10-11; AR 27-280.) On February 5, 2014, the plaintiff had asked the Army to expedite consideration of the plaintiff's appeal of his evaluation report on account of the QMP referral, which, the plaintiff alleges, the Army agreed to do but never did. (ECF 87 at ¶¶ 63, 64.) On February 10, 2014, the plaintiff acknowledged receipt of the denial of continued service, notified the defendant that he intended to appeal the notification, and requested retention on active duty. (ECF 91 at 8 (citing AR 12, 26).)

On March 3, 2014, the plaintiff submitted a request for appeal. (ECF 87 at ¶ 65; *see also* ECF 91 at 8 (citing AR 286-87).) His request for appeal of the QMP decision was denied on March 26, 2014, after what the plaintiff alleges were procedural irregularities. (ECF 87 at ¶¶ 71, 72.) The administrative record reflects that the plaintiff's appeal was found not to meet the established Army criteria to overturn the decision because it did not identify material error, new evidence, or subsequent removal of records. (ECF 91 at 9 (citing AR 9; AR 25; Army Reg. 600-8-19, ¶ 4-13; Army Reg. 635-200, ¶ 19-11).) Following the denial of his appeal, the plaintiff requested relief from the Secretary of the Army. (ECF 87 at ¶ 73.) The amended complaint does not refer to any decision by the Secretary of the Army.

Without apparent relief from the Secretary of the Army, the plaintiff submitted a DA Form 4187 ("Personnel Action"), requesting voluntary retirement in accordance with Army Regulation 635-200, chapter 12, to be effective July 31, 2014, with placement on the Army's retirement list on August 1, 2014.  (ECF 91 (citing AR 6).)  On the same day, April 4, 2014, COL Palmatier recommended approval of the plaintiff's request for retirement.  (*Id.* (citing AR 6-7).)  On April 11, 2014, the plaintiff completed the DA Form 2339 ("Application for Voluntary Retirement").  (ECF 87 at ¶ 74.)  On April 21, 2014, the Army Human Resources Command approved the plaintiff's request for retirement.  (ECF 91 citing (AR 5).)  The plaintiff was discharged to the retired list on July 31, 2014, the last day he could have remained in the Army.  (ECF 87 at ¶ 75.)

B.   **Procedural Background**

The plaintiff filed this complaint on August 1, 2014.  (ECF 1.)  In October 2016, the Court remanded the case to the ABCMR, sitting as a Special Board pursuant to 10 U.S.C. § 1558 and Army Directive 2016-33.  (ECF 60.)  During the remand period, in December 2016, the Court stayed the case pending the United States Court of Appeals for the Federal Circuit's consideration in *Santana v. United States*, 732 Fed. Appx. 864 (Fed. Cir. 2017), of whether exhaustion of the § 1558 remedy was a jurisdictional requirement.  (ECF 65.)  After the Federal Circuit decided *Santana* in February 2017 without determining whether exhaustion under § 1558 was jurisdictional, the Court continued to stay the case pending the outcome of the § 1558 process before the ABCMR.  (ECF 74.)  The case was transferred to this judge in June 2019.  (ECF 77.)

On December 3, 2019, the ABCMR convened as a special board to review the QMP decision that denied the plaintiff's continued service on active duty.  (AR 408-31.)  The Board asked the plaintiff's counsel if the plaintiff wanted a 10 U.S.C. § 1552 board first to review the merits of the underlying derogatory information that served as the basis for the QMP decision, but the plaintiff's counsel only wanted the ABCMR to review the QMP decision.  (AR 411.)  The ABCMR found no error and no injustice in the QMP decision and, on December 23, 2019, denied the plaintiff's petition.  (AR 407.)

The plaintiff filed an amended complaint (ECF 87) in February 2020, and the defendant moved to dismiss the complaint or, alternatively, for judgment on the administrative record.  The plaintiff cross-moved for judgment on the administrative record.  The Court held oral argument on July 23, 2020.

II.   **JURISDICTION AND STANDARD OF REVIEW**

The Tucker Act has been interpreted to limit this Court's jurisdiction over statutory and regulatory claims, even in the military pay context, to causes of action based on money-mandating statutes and regulations.  28 U.S.C. § 1491; *Metz v. United States*, 466 F.3d 991, 995-97 (Fed. Cir. 2006).  A statute is money-mandating when it is "*reasonably amenable* to the reading that it mandates a right of recovery in damages."  *Fisher v. United States*, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (emphasis in original).  The Military Pay Act is money-mandating as applied to active-duty personnel or to involuntary-discharge claims in which a plaintiff seeks "only . . . the salary of the rank to which he is appointed and in which he serves."  *Smith v. Sec'y*

*of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004); *Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013). The defendant does not contest that the Court has subject-matter jurisdiction over the plaintiff's claim for wrongful discharge.

The defendant, however, argues that the Amended Complaint fails to state a claim for relief and moves to dismiss all counts under RCFC 12(b)(6). (ECF 91.) In evaluating a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the Court must accept as true a complaint's well-pleaded factual allegations and construe them in the most favorable manner to the plaintiff. *Ashcroft v. Iqbal*, 566 U.S. 662, 668 (2009). The Court must draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed Cir. 2001).

To avoid dismissal under RCFC 12(b)(6), a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

### III.   DISCUSSION

The Court must first consider the defendant's motion to dismiss. Only if the Court has jurisdiction, and the amended complaint states a claim for relief does the Court need to proceed to consider the parties' cross-motions for judgment on the administrative record.

The defendant argues that the plaintiff fails to state a claim because his voluntary retirement—even if that retirement was merely a choice between two unappealing alternatives—precludes relief. (ECF 94 at 15-16 (citing *Sammt v. United States*, 780 F.2d 31, 33 (Fed. Cir. 1985)).) The plaintiff disagrees, arguing that his retirement was involuntary under the test announced in *Carmichael v. United States*, 298 F.3d 1367, 1372 (Fed. Cir. 2002), because the plaintiff challenged the non-judicial punishment, his evaluation and the QMP process, and ultimately retired on the last day he was permitted to be in service. (ECF 94 at 9-11.) The plaintiff further argues that the defendant coerced the plaintiff to retire through religious discrimination. (*Id.* at 12.)

The question of whether the plaintiff's amended complaint states a claim for relief comes down to whether his retirement was involuntary. The Federal Circuit has held that a service member retires voluntarily, even if that retirement is a least-bad choice because the service member would otherwise face an involuntary discharge or a court-martial. *See Sammt*, 780 F.2d at 33; *Metz*, 466 F.3d at 999-1000.

The Court begins its analysis with the plaintiff's own amended complaint. Nowhere in the amended complaint does the plaintiff allege that his retirement was involuntary. Although not a jurisdictional prerequisite, the failure of the plaintiff to allege anywhere in his amended complaint that his retirement was involuntary leads to the conclusion that he has failed to allege a necessary element of his claim, *i.e.,* that his retirement was involuntary. Therefore, the amended complaint fails to state a claim for relief. The amended complaint does, however, contain allegations of actions that could support an inference that the plaintiff's retirement was not

voluntary. Accordingly, the Court will analyze the plaintiff's assertions that he has alleged facts sufficient to overcome the defendant's motion to dismiss for failure to state a claim.

"Resignations or retirements are presumed to be voluntary." *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999), *abrogated on other grounds by Metz*, 466 F.3d 991. To overcome the presumption that a retirement is voluntary, a plaintiff must show that "(1) he involuntarily accepted the terms of the government; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the government's coercive acts." *Carmichael v. United States*, 298 F.3d 1367, 1372 (Fed. Cir. 2002). "[T]he government's failure to follow its own rules may constitute coercive action sufficient to result in" an involuntary retirement. *Id.* Whether a retirement decision was made under duress or coerced is determined under an objective test. *Id.* (citing *Christie v. United States*, 207 Ct. Cl. 333, 518 F.2d 584, 587 (Ct. Cl. 1975).

The plaintiff bases his argument that his retirement was involuntary on *Carmichael*'s tests, which the Court now considers.

With regards to the first prong of the *Carmichael* test, the plaintiff has failed to show that he involuntarily accepted the terms of his retirement. The plaintiff did not allege in either his initial or his amended complaint that his retirement was involuntary. (*See* ECF 1; ECF 87.) The plaintiff argues that to require him to plead specifically that his retirement was involuntary would be inconsistent with notice pleading requirements. (ECF 94 at 8.) Not so—the involuntariness of the plaintiff's retirement is central to his claim and failing to plead sufficient facts to show involuntariness means that the plaintiff cannot show that he is entitled to the relief sought. *See Twombly*, 550 U.S. at 558.

The involuntariness of the plaintiff's retirement also cannot be inferred from the plaintiff's appeals of his non-judicial punishment, Enlisted Evaluation Reports, and the QMP determination. (ECF 94 at 11.) Considered alone or together, these appeals cannot show that the plaintiff's retirement was involuntary. A service member is entitled to pursue all procedural avenues of relief available. Pursuing avenues of appeal should not be held against any service member, but availing oneself of such avenues of relief also is insufficient to demonstrate that a service member's decision to retire when his appeals are rejected is involuntary. The determination of whether a retirement is voluntary does not depend on a service member's pursuit of procedural avenues of possible relief that could, if successful, obviate the need to retire.

In addition to relying on *Carmichael*, the plaintiff argues that his resignation was involuntary because he waited until the last day on which he could leave the service to do so. The plaintiff's distinction is of no legal consequence. In *Adkins v. United States*, 68 F.3d 1317, 1321-22 (Fed. Cir. 1995), for example, the Federal Circuit rejected the government's argument that the plaintiff's selection of an earlier-than-required retirement date converted his otherwise involuntary retirement under 10 U.S.C. § 638a(b)(2)(a) into a voluntary one. The Federal Circuit's decision reflects that the timing of a retirement is not an indication of its voluntariness.

The fact that the plaintiff remained in the Army to the last possible day could reflect other considerations besides the voluntariness of his retirement. For example, he might have held off

retiring in order to continue earning income and to maximize his retirement benefits. The fact that the plaintiff remained in the Army until he no longer could sheds no light on whether his retirement was voluntary. The date the plaintiff chose to retire does not offer the kind of direct and objective proof going specifically to the issue of voluntarines needed to rebut the presumption that his retirement was voluntary.

Under the second prong of *Carmichael*, the plaintiff cannot show that he lacked alternatives. The plaintiff acknowledges that he was provided the option either to retire or be involuntarily discharged no later than August 1, 2014. (ECF 87 ¶¶ 60, 61 ("the QMP denied Plaintiff continued active duty and ordered him involuntarily discharged not later than August 1, 2014. The notification letter informed Plaintiff that in lieu of involuntary discharge he could request retirements to preserve his benefits and retirement pay.").)

The Court recognizes that the choice between retirement and involuntary discharge is difficult and unpleasant. A choice, however, still exists. Even when a service member wanted neither to retire nor be involuntarily discharged, the Federal Circuit has recognized that his election to retire was voluntary. *Sammt*, 780 F.2d at 32. The Federal Circuit's decision in *Sammt* is effectively controlling in this case. The plaintiff in *Sammt* was notified that, after being passed over twice by promotion boards, he would be placed on the retired list, as was required by statute, unless he requested voluntary retirement. The plaintiff then requested and received voluntary retirement. *Id.* After retiring, the plaintiff sued in this court, which entertained his claim, finding that a choice between retiring or being forced out of the Army by operation of law was no choice at all. On appeal, the Federal Circuit held "that the exercise of an option to retire is not rendered involuntary by the imminent imposition of a less desirable alternative." *Id.*

Just as the plaintiff in *Sammt* was found to have had a choice to retire, so too must the Court find that the plaintiff here had a choice. The choice was no doubt unpleasant: either decision the plaintiff made led him to a place he did not want to be. In effect, the plaintiff was confronted with a choice he had to make. In that respect, his having to make a choice, just as the plaintiff in *Sammt* had to make a choice, was not voluntary. The choice he made between the options available to him, however, must, under *Sammt*, be found to have been voluntary. The plaintiff cannot establish that he did not have any alternatives when he chose to retire instead of being involuntarily discharged. His decision to retire must be deemed voluntary.

"The United States Court of Federal Claims consistently has followed *Sammt v. United States*, barring claims for back pay when a plaintiff's resignation or retirement was voluntary." *Scarseth v. United States*, 52 Fed. Cl. 458, 468 (2002) (citing cases). In *Scarseth*, the plaintiff resigned from the Army to avoid a court-martial and subsequently sought to withdraw his letter of resignation; the Army denied the request to withdraw the resignation. Even when the service member could show objectively through evidence in the administrative record that he had sought to withdraw a letter of resignation, this court found that the resignation was voluntary and had not been coerced. 52 Fed. at 468-69.

Finally, under the third prong of the *Carmichael* test, the plaintiff cannot establish duress, coercion, or even the government's failure to follow its own rules. The plaintiff argues that the defendant failed to follow its own rules for religious accommodation. (ECF 94 at 13; ECF 87 at ¶¶ 80-93.) This case is unlike *Carmichael*, in which the Federal Circuit found that the plaintiff's

"voluntary" retirement was coerced because in that case the Navy failed to follow a Secretary of the Navy Instruction and denied reenlistment to the plaintiff due to his religious beliefs. 298 F.3d at 1372-73.

Here, on the other hand, the QMP determination was the basis for the choice the plaintiff faced: retire or be discharged. That QMP determination was itself informed by the plaintiff's Enlisted Evaluation Reports and his non-judicial punishment. The plaintiff fails to identify any way in which the Army failed to follow its own regulations or procedures with respect to the initiation of the QMP referral or its outcome.

The plaintiff took and continues to take issue with both his evaluation and his non-judicial punishment, the factors that the plaintiff alleges informed the QMP decision. The plaintiff could have continued to pursue avenues of administrative relief. He could have brought his complaints with both the evaluation and the non-judicial punishment, and with the QMP determination itself, before this Court had he accepted a discharge. He might have prevailed, but there was risk in such an approach. He decided to retire. He had that option on account of his many years of distinguished service. The procedural shortcomings he identifies, however, do not implicate the decision he made when he opted to retire, even if they do implicate the reasons the plaintiff was confronted with having to make a choice between two unappealing options. *See Kim v. United States*, 47 Fed. Cl. 493, 497-98 (2000).

The plaintiff has failed to allege that his retirement was involuntary and has failed to allege facts in his amended complaint or point to any elsewhere in the record adequate to overcome in an objective manner the presumption that his retirement was voluntary. Therefore, the plaintiff does not state a claim for which relief could be granted under the Military Pay Act, and his complaint must be dismissed with prejudice under RCFC 12(b)(6).

### IV. CONCLUSION

Because the plaintiff voluntarily retired, the Court must grant the defendant's motion to dismiss for failure to state a claim on which relief can be granted. The plaintiff's and defendant's cross-motions for judgment on the administrative record are denied as moot.

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**